# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

RICKY LEWIS and LULU LEWIS, etc., :

        Plaintiffs,                 :

vs.                          :      CA 10-0718-KD-C

STATE FARM FIRE AND         :
CASUALTY COMPANY, et al.,

                              :

        Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the notice of removal (Doc. 1), defendant Patrick Craig's motion for dismissal for fraudulent joinder (Doc. 2), the plaintiffs' motion to remand and memorandum of law in support of the motion (Doc. 9), and the response in opposition filed by defendants State Farm Fire and Casualty Company ("State Farm") and Patrick Craig (Doc. 11). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **DENY** plaintiff's motion to remand (Doc. 9) and **GRANT** Craig's motion for dismissal for fraudulent joinder (Doc. 2).

## FINDINGS OF FACT

1.     State Farm Fire and Casualty Company issued a renewal certificate to plaintiffs regarding their homeowners policy, Policy Number 01-ER-0896-3, on or about

June 25, 2009, covering their home at 409 4th Avenue in Selma, Alabama 36701. (*See* Doc. 1, Exhibit C, RENEWAL CERTIFICATE, at 1) The policy had an effective date of August 9, 2009 and provided coverage through August 9, 2010. (*Id*.) The face of the certificate reflects dwelling coverage of $118,100.00 and contents coverage of $88,575.00. (*Id*.)

2.      On April 12, 2010, plaintiffs "suffered losses due to a house fire that caused total destruction to the property located at 409 Fourth Avenue, Selma, Alabama 36701[.]" (Doc. 1, Exhibit A, COMPLAINT, at ¶ 16)

3.      On July 30, 2010, plaintiffs signed and mailed to State Farm a Sworn Statement in Proof of Loss. (*See* Doc. 1, Exhibit B, Sworn Statement in Proof of Loss attached to the Affidavit of Patrick Craig) Therein, plaintiffs made claim for $100,000 for their damaged residence and $40,243.00 for damaged personal property. (*Compare id. with* Craig aff., at ¶ 7)

4.      In an Examination Under Oath on August 25, 2010, Lulu Lewis stated that when she and her husband first applied for their homeowners policy with State Farm the agent they spoke with was Bob Meyers or Dale May. (Doc. 1, Exhibit B, Examination Under Oath Attached to Craig aff.) Defendant Craig was never "involved with the issuance of any State Farm insurance policy to the Plaintiffs." (Doc. 1, Exhibit B, Craig aff., at ¶ 4) However, Craig has at all times since the fire loss on April 12, 2010 "represented State Farm in the handling and adjustment" of the claims made by the Lewises. (*Id*. at ¶ 3)

5.	On September 27, 2010, counsel for State Farm penned a letter to plaintiffs' counsel, Barry Walker, Esquire, same reading, in relevant part, as follows:

I appreciate your demand that the claim be resolved within 10 days from the date of your letter, but as I explained to you, there are a number of matters still being investigated with respect to this fire. Specifically, the question of whether Mr. or Mrs. Lewis were somehow responsible for this fire, and/or whether either or both of them made material misrepresentations with respect to this claim are unresolved questions. During our call, I told you that the evidence that has been developed showed that Mrs. Lewis' son, Kelvin, showed up at the Selma Hospital Emergency Room very soon after the fire was called in, with burns on his body and smelling of gasoline. Later, after being transported to the UAB Burn Center, Mrs. Lewis was at the hospital with Kelvin, was given instructions by the nursing staff, and signed the discharge instructions for Kelvin. You may recall that both of your clients denied under oath that Kelvin had been burned, went to the hospital, or that Mrs. Lewis was at the hospital with him.

You state in your letter that "there is compelling evidence that Mr. Lewis was retaliated against for his willingness to testify against drug dealers in his community." Based on the testimony from the EUO, this is another factual issue that is being investigated, and reviewed in conjunction with all the facts and circumstances of this claim. State Farm obviously has an obligation, and indeed the right, to investigate these issues in an effort to determine whether your clients' claim is properly payable, or whether your clients have violated the provisions of the policy (their contract with State Farm) related to intentional acts and/or misrepresentations.

Moreover, because the issue in this case is whether the claim is payable or not, and not the amount of the loss itself, the appraisal provision of the policy is not yet applicable. Should State Farm resolve the remaining issues in favor of Mr. and Mrs. Lewis, and proceed with the adjustment of the claim, to the extent there is a dispute over the amount of loss at that time, State Farm will be happy to entertain your demand for appraisal. It is simply premature at this point.

I must take strong issue with any assertion by you that State Farm has acted in bad faith with respect to your clients. The signed proof of loss was not provided by your clients until July 30, 2010, and their EUOs taken within a month after that. As I noted above, State Farm has the right to investigate the claim, and although no decision has been made as yet, I can

assure you that State Farm is moving with the utmost diligence in attempting to complete the investigation and reach a decision regarding this claim. I also remind you that your clients have not yet returned the signature pages (and to the extent there are any corrections, the errata sheets) from their EUOs.

Also, during our discussion, you made reference to Mrs. Lewis <u>not</u> being a named insured. If I misunderstood you, I apologize. However, that is not correct. Under the applicable homeowner's insurance policy with State Farm, both Ricky and Lulu Lewis are named insureds.

Finally, with respect to your statement that "no funds have been allocated" to your clients, that is also incorrect. State Farm has been and continues to pay ALE to your clients. State Farm has also advanced your clients $5,000 toward their contents claim.

(Doc. 1, Exhibit A, September 27, 2010 Letter Attached to COMPLAINT (emphasis in original))

6. On November 23, 2010, plaintiffs Ricky and Lulu Lewis filed this bad faith, breach of contract, negligence, and fraud action against named defendants State Farm Insurance Company,[1] State Farm Fire & Casualty Company, and Patrick Craig, as well as fictitious parties, in the Circuit Court of Dallas County, Alabama. (Doc. 1, Exhibit A, COMPLAINT) Plaintiffs assert their breach of contract claim only against the corporate defendants, not against Patrick Craig. (*See id.* at 9 ("PLAINTIFFS ALLEGE, FOR A SECOND CAUSE OF ACTION AGAINST STATE FARM INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY FOR BREACH

---

[1] Because it does not appear that State Farm Insurance Company is a State Farm affiliated entity (*see* Doc. 1, Exhibit B, Craig aff., at ¶ 8), the undersigned has reconfigured the style of this case to reflect State Farm Fire & Casualty Company as the lead defendant. However, even assuming State Farm Insurance Company is a viable and suable entity, its citizenship would not adversely impact this Court's jurisdictional analysis since plaintiffs identified this alleged defendant as a citizen of Illinois (*see* Doc. 1, Exhibit A, COMPLAINT, at ¶ 2).

OF CONTRACT")) Therefore, the complaint, as to Craig, reads, in relevant part, as follows:

## FIRST CAUSE OF ACTION
(Breach of the Duty of Good Faith and Fair Dealing)

PLAINTIFFS, FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGE:

19.     Plaintiffs refer to each and every paragraph of the General Allegations and incorporate those paragraphs as though set forth in full in this cause of action.

20.     Defendant insurer has breached its duty of good faith and fair dealing owed to the plaintiffs in the following respects:

(a)     Unreasonably and in bad faith failing to resolve this claim.

(b)     Unreasonably and in bad faith withholding sums due and owing to Plaintiffs or to others for the benefit of Plaintiffs for the losses by refusing to resolve the claim.

(c)     Unreasonably and in bad faith delaying sums due and owing to Plaintiffs or to others for the benefit of Plaintiffs for the losses by failing to resolve the claim.

(d)     Unreasonable and bad faith failure to make benefit payments to Plaintiffs at a time when Defendant knew that Plaintiffs were entitled to the payments under the terms of the policies.

(e)     Failing to reasonably investigate and process Plaintiffs' claims for benefits in a timely manner or at all.

(f)     Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' claims for benefits in which liability has become reasonably clear.

(g)     Failing to provide a prompt and reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for no offer of a settlement.

(h)     Compelling Plaintiffs to institute litigation to recover amounts due under an insurance policy by causing undue delay in resolving the claim.

(i)     Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

(j)     Failing to provide full and adequate benefits to fully and completely insure Plaintiffs' losses despite Defendants' agents' assurances at the time Plaintiffs purchased the policies that the coverage provided was full, adequate and sufficient for Plaintiffs' needs.

21.     Plaintiffs are informed and believe and thereon allege that the insurer has breached its duty of good faith and fair dealing owed to Plaintiffs by other acts or omissions of which Plaintiffs are presently unaware and which will be shown according to proof at the time of trial.

.     .     .

23.     As a proximate result of the above unreasonable and bad faith conduct of Defendants, Plaintiffs have suffered, and will continue to suffer in the future, damages under the policies, plus interest, and other economic and consequential damages for a total amount to be shown at the time of trial.

24.     As a further proximate result of the above wrongful conduct of Defendants, Plaintiffs have suffered anxiety, worry, mental and emotional distress, all to Plaintiffs' general damage in a sum to be determined at the time of trial.

25.     As a further proximate result of the unreasonable and bad faith conduct of Defendants, the Plaintiffs were compelled to retain legal counsel to obtain the benefits due under the policies. Therefore, Defendants are liable to the Plaintiffs for those attorneys' fees, witness fees and costs of litigation reasonably necessary and incurred by Plaintiffs in order to obtain the benefits owed under the policies in a sum to be determined at trial.

26.     Defendant's conduct described herein was intended by the Defendant to cause injury to Plaintiffs or was despicable conduct carried on by the Defendant with a willful and conscious disregard of the rights of

Plaintiffs, or subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, or was an intentional misrepresentation, deceit, or concealment of a material fact known to the Defendant with the intention to deprive plaintiffs of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under Alabama law, thus entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of defendant.

.     .     .

## THIRD CAUSE OF ACTION
(Negligence)

PLAINTIFFS, AND EACH OF THEM, FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS, AND EACH OF THEM, FOR NEGLIGENCE, ALLEGE:

32.     Plaintiffs refer to each and every paragraph of the General Allegations, First Cause of Action, and Second Cause of Action  and incorporate those paragraphs as though set forth in full in this cause of action.

33.     At all relevant times, Defendants, and each of them, knew that Plaintiffs were and would be relying upon the accuracy, good faith and expertise of the Defendants, and each of them, in obtaining insurance coverage for Plaintiffs' property and knew of the importance to plaintiffs of performing accurately, competently and truthfully, with respect to the obtaining of full and adequate insurance to protect Plaintiffs' interests as requested by Plaintiffs. As such, Defendants, and each of them, were under a duty to Plaintiffs to procure and obtain full and adequate auto insurance coverage protecting Plaintiffs' interests as requested by Plaintiffs and Defendants were under a duty to Plaintiffs to assist Plaintiffs in maintaining full coverage of all insurable property losses.

34.     Defendants, and each of them, breached their duties as set forth above and were negligent by the following acts and omissions:

(a)     Despite Plaintiffs' requests that they do so, and despite Defendants' representations that they would, Defendants failed to properly investigate and resolve this claim in a timely manner.

.     .     .

36.     As a proximate result of the above unreasonable and negligent conduct of Defendants, Plaintiffs have suffered, and will continue to suffer in the future, general and special damages to be determined at the time of trial.

FOURTH CAUSE OF ACTION
(Fraud)

PLAINTIFFS ALLEGE AGAINST DEFENDANTS, AND EACH OF THEM, FOR A FOURTH CAUSE OF ACTION FOR FRAUD:

37.     Plaintiffs incorporate by reference each and every paragraph of the General Allegations, First Cause of Action, Second Cause of Action and  Third Cause of Action as though set forth in full in this cause of action.

38.     ***At all relevant times Defendants, and each of them, had a special relationship with Plaintiffs which required Defendants to disclose to Plaintiffs material facts regarding the policy being issued to plaintiffs. Defendants' failure to disclose this material information despite the duty to do so constitutes a misrepresentation.***

39.     At the time these representations were made by Defendants, Plaintiffs were ignorant of the falsity of Defendants' representations and believed them to be true. ***In reliance on these misrepresentations, Plaintiffs were induced to pay premiums on the homeowners' insurance policy and were induced to refrain from seeking insurance through another company or source.***

40.     Had Plaintiffs known the actual facts, Plaintiffs would not have taken such action. Plaintiffs' reliance on Defendants' representations was justified because Plaintiffs were depending upon the honesty and good faith of Defendants in relying [on] Defendants' representations.

41.     As a result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer in the future, damages under the Policies, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

42.     As a further proximate result of the above wrongful conduct of Defendants, Plaintiffs have suffered anxiety, worry, mental and emotional distress, all to Plaintiffs' general damage in a sum to be determined at the time of trial.

43.     The conduct of Defendants described here was intended by those Defendants to cause injury to Plaintiffs or was despicable conduct carried out by the Defendants with a willful and conscious disregard of the rights of Plaintiffs, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to those Defendants, made with the intention to deprive Plaintiffs of property, legal rights or to otherwise cause injury, such as to constitute malice, oppression or fraud under Alabama law, thus entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

44.     The acts and omissions of Defendants, and each of them, were made with a conscious disregard of the health and safety of Plaintiffs, thus entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

.     .     .

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

AS TO EACH CAUSE OF ACTION:

1)     Damages for failure to provide benefits under the policies, plus interest, including prejudgment interest, and other economic and consequential damages, in a sum to be determined at the time of trial;

2)     General damages for mental and emotion distress in a sum to be determined at the time of trial;

3)     For attorneys' fees, witness fees and costs of litigation incurred by Plaintiffs to obtain the benefits owed under the policies in an amount to be determined at the time of trial;

4)     Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

5)     For costs of suit incurred here;

6) For such other and further relief as the Court deems just and proper.

(*Id*. at 6-7, 7-8, 10, 11, 11-12 & 13-14 (emphasis supplied))

7. State Farm was served with the complaint on November 29, 2010 (*see* Doc. 1, Exhibit A, NOTICE OF SERVICE) and timely removed same to this Court on December 29, 2010 in accordance with the first paragraph of 28 U.S.C. § 1446(b) (*see* Doc. 1). In the removal petition, the removing defendants argue that Craig's citizenship need be disregarded by this Court because "[t]here is no possibility that Plaintiffs can establish any of their alleged four (4) causes of action against Craig." (Doc. 1, at 3)[2] In addition, the removing defendants argue that the requisite jurisdictional amount is readily deducible from the complaint, and supporting documents, for the following reasons: "(a) As of Plaintiffs April 12, 2010 fire loss, the State Farm policy provided dwelling coverage of $118,100 and contents coverage of $88,575[;] (b) Plaintiffs claim their house insured by State Farm suffered 'total destruction[;]' and (c) Plaintiffs submitted a Sworn Statement in Proof of Loss claiming $100,000 for their damaged dwelling and $40,243.00 for damaged personal property. A $35,243.00 balance remains outstanding on

---

[2] As the undersigned has previously indicated, the plaintiffs' complaint cannot be read as asserting a cause of action against Craig for breach of contract (*see* Doc. 1, Exhibit A, COMPLAINT, at 9 ("PLAINTIFFS ALLEGE, FOR A SECOND CAUSE OF ACTION AGAINST STATE FARM INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY FOR BREACH OF CONTRACT")) and, therefore, the undersigned need not consider the removing defendants' arguments in regard to plaintiffs' breach of contract claim. In other words, this cause of action plays no part in the undersigned's fraudulent joinder analysis.

the contents claim and nothing has been paid on the $100,000 dwelling claim." (Doc. 1, at 7 (internal citations omitted))

8.      Plaintiffs filed their motion to remand and memorandum of law in support of the motion on January 12, 2011 (Doc. 9). Plaintiffs argue that the defendants have not carried their heavy burden of establishing fraudulent joinder inasmuch as they certainly have a possibility of establishing a fraud claim against the resident defendant.[3]  The undersigned appreciates the argument of plaintiffs to be that their implicit complaint allegation that State Farm and Craig share in the underwriting profits of the policy (*compare* Doc. 9, at 5 ("The Plaintiffs were informed and believed that State Farm and Craig share in the underwriting profits of the policy.") *with* Doc. 1, Exhibit A, COMPLAINT, at ¶ 9 ("Plaintiffs are informed and believe and thereon allege that STATE FARM INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY was, and is, responsible for hiring and training the employees of STATE FARM INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY, including sales agents and claim adjusters. These employees sold the policies at issue in this case or processed and continue to process claims for STATE FARM INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY.")) undermines the defendants' contention that Craig was not involved in the issuance of the policy such that "[w]hether and to what extent Craig was involved in the

_____

[3]      In their memorandum of law in support of the motion to remand, plaintiffs focus entirely on their fraud claim, to the exclusion of all other claims. As previously indicated, plaintiffs did not state a breach of contract claim against Craig.

issuance of [the] policy requires a determination under all the facts and all of the circumstances surrounding the issuance of [the] policy." (Doc. 9, at 5) Moreover, because Craig has admitted that he "is responsible for handling and adjustment of Plaintiffs' claims based on the policy[,]" plaintiffs argue that the resident defendant is properly sued in his individual capacity "for fraudulent misrepresentation and [a] state court could find the[ir complaint] states a cause of action against Craig." (*Id*. at 7)[4] Regarding the amount in controversy, plaintiffs contend that State Farm's speculative statements are inadequate to confer federal jurisdiction. (Doc. 9, at 9-10) More specifically and pointedly, plaintiffs argue that "[t]he problem with the Defendants' notice of removal is that the Defendants improperly rely on documents that were not supplied by the Plaintiff[s]." (*Id*. at 9)

     9.     In opposition to plaintiffs' motion to remand, the removing defendants argue that the amount in controversy has been met in this case because the Sworn Statement in Proof of Loss is a document which was supplied by and received from the

---

[4]     While plaintiffs never directly cite to the affidavit of Ricky Lewis that is attached to the motion to remand in support of this particular argument (*see* Doc. 9), it appears to the undersigned that plaintiffs are inviting the undersigned to consider the affidavit. In an attempt to be as thorough as possible, the undersigned notes that the affidavit of Ricky Lewis reads, in part, as follows: "On April 12, 2010, my residence at 409 4th Avenue, Selma, AL, burned down and was a total loss. Since that time, the only State Farm representative I have dealt with on a regular basis is my State Farm Claims Adjuster, Pat Craig. We have talked to Mr. Craig almost exclusively and after we hired a lawyer the only person we have dealt with was either Mr. Craig or an attorney hired by State Farm. In fact, Mr. Craig was present during my examination under oath with this attorney. Mr. Craig has made numerous purposeful misrepresentations to us during the claims process, for example, we were informed by Mr. Craig that State Farm had a specific time within which to investigate this claim and pay us or deny the claim. Mr. Craig informed us that after we filled out our personal property inventory it would be paid. None of his representations have turned out to be true and we believe they were purposely made to prolong the process and frustrate us into walking away from our claim or taking considerably less for our claim's value. In any event, Mr. Craig made false misrepresentations to us that he never intended to fulfill." (Doc. 9, Exhibit 1, Affidavit of Ricky Lewis)

plaintiffs themselves and, in any event, controlling law now provides that "'[d]efendants may introduce their own affidavits, declarations, or other documentation . . . .'" (Doc. 11, at 2; *see also id*. at 4-5) Moreover, regarding fraudulent joinder, defendants contend that plaintiffs seek to improperly change their fraud cause of action "to one concerning alleged post-loss misrepresentations by Craig . . . ." (*Id*. at 2; *see also id*. at 5-7)

## CONCLUSIONS OF LAW

### A.     Jurisdiction in General.

1.     There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Moreover, the removing defendant must bear "the

burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted).

2. Where, as here, jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332 (*see* Doc. 1, at ¶¶ 2 & [4] ("This Court has jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441, in that there is diversity of citizenship among the real and *proper* parties in interest[.] . . . In addition to diversity of citizenship among the real and proper parties to this cause, this Court has jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441, in that there is a sufficient jurisdictional amount in controversy.")),[5] the removing parties, State Farm and Craig, bear the burden of establishing complete diversity of citizenship, that is, that the plaintiffs are diverse from all the defendants, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the

---

[5] Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).

evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Moreover, as a procedural matter, the removal must be timely. *See, e.g., Clingan v. Celtic Life Ins. Co.*, 244 F.Supp.2d 1298, 1302 (M.D. Ala. 2003) ("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be strictly applied.'"); *cf. Moore v. North America Sports, Inc.,* 623 F.3d 1325, 1329 (11th Cir. 2010) ("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.").[6]

### B. Whether Complete Diversity of Citizenship Exists.

3. As previously indicated, the diversity statute, 28 U.S.C. § 1332, demands complete diversity, such that plaintiffs may not be citizens of the same state as any defendant. *See, e.g., Florence v. Crescent Resources, LLC,* 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("28 U.S.C. § 1332 requires 'complete diversity'-the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").

---

[6] The plaintiffs do not argue that the instant removal petition was not timely filed. (*See* Doc. 9)

4.    "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs, supra,* 154 F.3d at 1287. Notwithstanding the complete diversity requirement, a non-diverse defendant who is fraudulently joined does not destroy jurisdiction because his citizenship is excluded from the diversity equation. Under well-settled law, a finding of fraudulent joinder is appropriate in circumstances presented here only if "'there is *no possibility* the plaintiff can establish a cause of action against the resident defendant.'" *Henderson v. Washington Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006) (emphasis supplied; citation omitted); *see also Florence, supra,* 484 F.3d at 1299 ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."); *Triggs*, 154 F.3d at 1287 ("'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.'"). Thus, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (citation omitted); *see also Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998) ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

5.    "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented

by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," the jurisdictional inquiry "must not subsume substantive determination." Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra*, 113 F.3d at 1538 (internal citations omitted).

6.      "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations omitted).

7.     Because the removing defendants must show by clear and convincing evidence that there is no possibility the plaintiffs can establish a cause of action against the resident defendant, *Henderson,* 454 F.3d at 1281, it is no surprise that courts describe the burden on the removing parties to prove fraudulent joinder as a "heavy one." *Crowe,* 113 F.3d at 1538 (citation omitted).

8.     Since the Lewises and Craig are Alabama citizens for diversity purposes, State Farm and Craig predicate removal jurisdiction under § 1332 on their argument that Craig's citizenship does not count in the diversity analysis since he was fraudulently joined. The analysis in this case has been distilled down to whether a possibility exists

that plaintiffs can establish a fraud claim against the resident defendant.[7] (*See* Doc. 9) In their complaint, plaintiffs allege that the defendants failed to disclose to them material facts regarding the homeowners policy being "***issued***" to them (that is, point-of-sale suppression) and that such failure constituted a misrepresentation which plaintiffs relied upon to their detriment by paying premiums for the policy instead of seeking insurance through another company. (*See* Doc. 1, Exhibit A, COMPLAINT, at ¶¶ 38-42) Inasmuch as it is clear that Craig was in no manner involved in the issuance of the subject homeowners policy to the Lewises (*compare* Doc. 1, Exhibit B, Craig aff., at ¶¶ 2 & 4 ("I have worked with the State Farm Insurance Companies [] for over thirty one years. Throughout that time, I have been engaged with the handling and adjustment of claims submitted by policy holders of State Farm. ***I have never worked as an agent nor in any way been involved in the issuance of insurance policies to insureds***. . . . ***At no time was***

_____

[7]     The undersigned reiterates that plaintiffs' complaint does not state a breach of contract claim against Craig (*see* Doc. 1, Exhibit A, COMPLAINT, at 9) but even if it did, there is no possibility plaintiffs can establish a breach of contract claim against Craig because he is not a party to the homeowners policy/contract at issue in this case, *see, e.g., Pate v. Rollison Logging Equipment, Inc.,* 628 So.2d 337, 343 (Ala. 1993) ("The insurance contracts were between Pate and the insurers. Anderson cannot be liable for breach of contract, because he acted as a broker to place the insurance and was not a party."); *Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.,* 551 So.2d 283, 285 (Ala. 1989) ("The undisputed evidence reveals that Hughes was not a party to Ligon's insurance contract with Compass and that Gay & Taylor and Routledge were not parties to it either. Thus, the trial court properly entered summary judgment on the claim alleging a breach of the insurance contract."). Moreover, plaintiffs make no argument in their memorandum of law in support of the motion to remand that they have a possibility of establishing a bad faith claim or negligent claims handling claim against Craig (*see* Doc. 9). This is for good reason, since plaintiffs have no possibility of establishing either of these claims against Craig. *See, e.g., Kervin v. Southern Guaranty Ins. Co.,* 667 So.2d 704, 706 (Ala. 1995) ("[T]his Court has consistently refused to recognize a cause of action for the negligent handling of insurance claims[.]"); *Ligon Furniture Co., Inc.*, *supra* ("The tort of 'bad faith' is not a cognizable cause of action in Alabama, except in the context of a breach of an insurance contract by a ***party*** to that insurance contract[.]" (emphasis supplied; internal citations omitted)).

***I ever involved with the issuance of any State Farm insurance policy to the Plaintiffs.***"

(emphasis supplied)) *with* Doc. 1, Exhibit B, Examination Under Oath of Lulu Lewis

attached to Craig aff., at 65 (identifying as the agent from whom the homeowners policy

was purchased as either Dale May or Bob Meyers)), there is no possibility that plaintiffs

can establish the fraud claim asserted in the complaint against Craig.[8]

    9.    While it is clear that the determination of whether a resident defendant has

been fraudulently joined is based upon the plaintiffs' "pleadings at the time of removal,

supplemented by any affidavits and deposition transcripts submitted by the parties[,]"

*Pacheco de Perez*, *supra,* 139 F.3d at 1380, it is also very consistently clear that "[p]ost-

removal filings may not be considered [] when or to the extent that they present new

causes of action or theories not raised in the controlling petition filed in state court."

*Griggs v. State Farm Lloyds,* 181 F.3d 694, 700 (5th Cir. 1999); *see also Widder v. State*

*Farm Fire & Casualty Co.,* 2010 WL 4386698, *2 (E.D. Cal. Oct. 28, 2010) ("In

deciding whether joinder was fraudulent, the court will not look at post-removal filings to

the extent they introduce new causes of action or legal theories."); *King v. Provident Life*

---

[8]    In other words, plaintiffs simply have no evidence that Craig made any misrepresentations of material facts when the homeowners policy was issued to them. *See Allstate Ins. Co. v. Eskridge*, 823 So.2d 1254, 1258 (Ala. 2001) ("'The elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence.'").

    The suggestion by plaintiffs that their implicit complaint allegation that State Farm and Craig share in the underwriting profits of the subject policy undermines the defendants' contention that the resident defendant was not involved in the issuance of the policy does nothing for plaintiffs' argument given their failure to link Craig to any alleged misrepresentations made at the time the subject policy was issued.

*& Accident Ins. Co.,* 2010 WL 2730890, *2 (E.D. Tex. June 4, 2010) ("Because the petition as filed in state court controls the inquiry, post-removal filings may not be considered when or to the extent that they present new causes of action or theories."), *report & recommendation adopted by* 2010 WL 2730888 (E.D. Tex. July 9, 2010); *see Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 263 & n.14 (5th Cir. 1995) (finding no case law supporting the plaintiffs' assertion that post-removal affidavits can be used to defeat removal by presenting new causes of action against the nondiverse defendant not alleged in the state court complaint); *cf. Nelson v. Whirlpool Corp.,* 727 F.Supp.2d 1294, 1304 & 1305 (S.D. Ala. 2010) ("Allowing a post-removal amendment to eliminate jurisdiction that existed at the time of removal would [] nullify the well-established rule that the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal. That rule prevents a plaintiff from avoiding a fraudulent joinder determination (and thus securing remand) by amending the complaint, before a ruling on the fraudulent joinder issue, to insert a previously excluded viable claim. But the rule would be rendered pointless if a plaintiff could simply wait until after a fraudulent joinder determination, then make the same amendment and thereby secure remand. Nothing presented to the Court commends such an implausibly tortured result. . . . [T]he post-removal assertion of a viable cause of action against a fraudulently joined defendant does not strip the Court of subject matter jurisdiction that existed at the time of removal."). Thus, the affidavit statements of Ricky Lewis that Craig made numerous misrepresentations to plaintiffs (after the fire) during the "***claims process***" (that is, post-loss misrepresentations) (Doc. 9,

Exhibit 1, Ricky Lewis aff.) cannot be utilized to prevent a finding of fraudulent joinder or otherwise strip this Court of subject matter jurisdiction.

10.     The plaintiffs' fraudulent misrepresentation/suppression claim set forth in their state court complaint, to the extent it is asserted against Craig, is obviously "frivolous or fraudulent[.]" *Crowe*, 113 F.3d at 1542. Since the removing defendants have shown by clear and convincing evidence that there is no possibility the plaintiffs can establish a cause of action against the resident defendant, Craig's citizenship is properly excluded from the diversity equation and complete diversity of citizenship is found to exist.

### C.     <u>Whether the Amount in Controversy Has Been Satisfied</u>.

11.     Mere diversity, in and of itself, is not sufficient to create jurisdiction under § 1332 since "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted).

12.     Recently, in *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (2010), a panel of the Eleventh Circuit reminded district courts that the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section. *See id*. at 760. This is not only because the first paragraph of § 1446(b) does not "restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal." *Id.* at 771; *see also id.* at 759 (a removing defendant can offer its "own affidavits or other evidence to establish federal removal jurisdiction[,]"); *id*. at 755 & 756 ("The substantive jurisdictional requirements of removal do not limit the types

of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation-provided of course that removal is procedurally proper. . . . The other circuit courts of appeal that have addressed the issue agree with our circuit law that defendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal. . . . No court of appeals decision we could find holds that a defendant may not submit its own evidence in order to satisfy the jurisdictional requirements of removal, and we conclude that the defendant can."); *id.* at 761 ("*Lowery's* 'receipt from the plaintiff' rule has no application to cases, like this one, which are removed under the *first* paragraph of § 1446(b)."), but, as well, because "the use of deduction, inference, or other extrapolation of the amount in controversy is [not] impermissible," *id.* at 753; *see also id.* ("A different question is presented [] when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing."); *id.* at 770 ("It is true that '[n]othing in Lowery says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount.' . . . And viewing facts through the lens of common sense is not star gazing."), and "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* at 754; *see also id.* ("The law does not demand perfect

knowledge or depend any less on reasonable inferences and deductions then we all do in everyday life.").

13.     Inasmuch as the instant removal petition was filed within thirty (30) days of service of the complaint (*compare* Doc. 1 (filing date of December 29, 2010) *with* Doc. 1, Exhibit A, NOTICE OF SERVICE (service date of November 29, 2010)), this is a first paragraph removal under § 1446(b).[9] Therefore, in line with *Pretka*'s reminder that the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section and its teaching that the first paragraph does not restrict the type of evidence that a defendant may use to satisfy the jurisdictional requirements for removal, the undersigned recommends that the Court find that the removing defendants have supplied plentiful documentation which establishes by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement. The defendants attached to the removal petition a copy of the homeowners renewal certificate reflecting dwelling coverage of $118,100 and contents coverage of $88,575 (Doc. 1, Exhibit C) and, as well, the affidavit of Patrick Craig which incorporates by reference (and attachment) the plaintiffs' Sworn Statement in Proof of Loss wherein the plaintiffs made claim, on July 30, 2010, for $100,000 for their damaged

---

[9]     "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b).

residence and $40,243.00[10] for damaged personal property (Doc. 1, Exhibit B, Craig aff. & Attached Sworn Statement in Proof of Loss). When this evidence, *see Roe v. Michelin North America, Inc.,* 613 F.3d 1058, 1061 n.4 (11th Cir. 2010) ("In § 1446(b) first-paragraph cases, the removing defendant may present additional evidence-business records and affidavits, for instance-to satisfy the jurisdictional burden."), is considered in combination with the allegations of plaintiffs' complaint that the April 12, 2010 house fire "caused total destruction to the property located at 409 Fourth Avenue, Selma, AL" (Doc. 1, Exhibit A, COMPLAINT, at ¶ 16) and damages are being sought for State Farm's failure to provide benefits under the homeowners policy (*see id*. at 13), it is clear that this case involves the requisite amount in controversy.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that plaintiff's motion to remand (Doc. 9) be **DENIED** and that defendant Patrick Craig's motion for dismissal for fraudulent joinder (Doc. 2) be **GRANTED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 15th day of February, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[10]       State Farm did pay plaintiffs $5,000 on April 14, 2010 as an advance on the contents claim. (Doc. 1, Exhibit B, Craig aff. at ¶ 7)

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).    The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[11] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[11]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).